IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-1308

FREE THE NIPPLE – FORT COLLINS, an unincorporated association,
BRITTIANY HOAGLAND, and
SAMANTHA SIX,

    Plaintiffs,

v.

CITY OF FORT COLLLINS, COLORADO,

    Defendant.

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs, by and through their attorneys David Lane and Andy McNulty, hereby file this Motion for Preliminary Injunction. Plaintiffs respectfully request that this Court enjoin enforcement of FORT COLLINS, CO., MUN. CODE § 17-142 (2016) and prohibit Defendants from discriminatorily arresting Plaintiffs, and all others similarly situated, when they engage in the protected activity of standing topless in public places in Fort Collins, Colorado. The grounds for this motion are set forth fully herein:

### INTRODUCTION

This is a civil rights action for declaratory and injunctive relief as well as fees and costs arising under 42 U.S.C. §§ 1983, 1988 and 28 U.S.C. § 2201 *et seq.* due to Defendant's current and imminent violations of Plaintiffs' rights guaranteed by the First and Fourteenth Amendments to the United States Constitution and the Equal Rights Amendment to the Colorado Constitution. Plaintiffs wish to stand topless in Fort Collins, Colorado as a protest against the exploitation and sexualization of women's

1

bodies, but are prevented from doing so by a sexist, puritanical ordinance that criminalizes the exposure of the female breast and nipple while permitting exposure of the male breast and nipple.

In August 2015, Plaintiffs Free the Nipple – Fort Collins, an unincorporated association, Brittiany Hoagland, and Samantha Six, residents of Colorado (collectively, "Plaintiffs"), began to raise awareness about a discriminatory ordinance in Fort Collins, Section 17-142, which criminalized women for appearing topless at public places but imposed no sanctions on men for engaging in the exact same activity. As a result of Plaintiffs' efforts, the Fort Collins City Council scheduled a meeting on October 20, 2015, so as to consider repealing the ordinance.

In anticipation of the October 20, 2015, city council meeting, whereat Section 17-142 would be discussed, Plaintiffs organized a rally in downtown Fort Collins, at the corner of College Avenue and Mulberry Street on August 23, 2015. At the protest, men and women engaged in expressive conduct to convey a particularized message: promoting gender equality, protesting women's inferior legal status, and denouncing the double standard underlying government censorship of female breasts. Hoagland, Six, and other female rally participants complied with the previous version of Section 17-142 by covering their breasts and nipples but otherwise exposing the tops of their bodies. Male participants also exposed the tops of their bodies but also covered their breasts and nipples, though not required to by law, as a sign of solidarity with women and to demonstrate the frivolity of Fort Collins' sex-based regulation of nipples and breasts.

During the city council meeting on the evening of October 20, 2015, and in direct response to the protests, the Fort Collins City Council amended the language of Section 17-142 and reinforced its sex-based distinctions. The language of Section 17-142 states: "No female who is ten (10) years of age or older shall knowingly appear in any public place with her breast exposed below the top of the areola and nipple while located: (1) in a public right-of-way, in a natural area, recreation area or trail, or recreation center, in a public building, in a public square, or while located in any other public place; or (2) on private property if the person is in a place that can be viewed from the ground level by another who is located on public property and who does not take extraordinary steps, such as climbing a ladder or peering over a screening fence, in order to achieve a point of vantage." The ordinance defines "public place" as "a place in which the public or a substantial number of the public has access, and includes but i[s] not limited to highways including sidewalks, transportation facilities, school[s], places of amusement, parks, playgrounds and the common areas of public and private buildings and facilities, and shall not include any theater, concert hall, museum, school or similar establishment to the extent the same is serving as a performance venue." The ordinance exempts from this regulation "women breastfeeding in places they are legally entitled to be."  *See* FORT COLLINS, CO., MUN. CODE § 17-142 (2016). The new ordinance restricts women—and only women—from publicly showing any portion of their breasts below the top of the areola or nipple. The new ordinance only includes exceptions for female breast exposure if it is necessarily incident to breast-feeding an infant.

Fort Collins' new ordinance violates the First Amendment as a content-based restriction on protected expression. It also violates the Fourteenth Amendment's Equal Protection clause because it is a gender-based classification neither supported by, nor substantially related to, a constitutionally sufficient justification. Finally, it violates the Colorado Constitution's Equal Rights Amendment because it is a sex-based classification that is not narrowly tailored to further a compelling government interest. In this motion, Plaintiffs request that this Court enjoin enforcement of Section 17-142. Plaintiffs plan to hold further protests at public places in Fort Collins, Colorado. They wish to participate in those events and invite others to do so as well. They have been chilled, in violation of the First Amendment, from engaging in the expressive conduct uniquely suited to convey their message about systemic and invidious gender inequality.

## FACTUAL BACKGROUND

All statements of fact are set forth in the simultaneously filed Complaint and are hereby incorporated into this Motion for Preliminary Injunction as though set forth fully herein.

## PARTIES

All statements of fact regarding the parties are set forth in the simultaneously filed Complaint and are hereby incorporated into this Motion for Preliminary Injunction as though set forth fully herein.

## ARGUMENT

### I. Preliminary Injunction Standard

In considering whether to issue a preliminary injunction, this Court must consider: (1) whether Plaintiffs have a substantial likelihood of prevailing on the

merits, (2) whether Plaintiffs face a threat of irreparable harm absent the injunction, (3) the balance between this harm and the injury that the injunction's issuance would inflict upon Defendant, and (4) the public interest. *American Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1155 (10th Cir. 1999). "When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Minnesota Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2011) (en banc) (internal quotation marks omitted). Accordingly, when plaintiffs are "likely to win on the merits of [their] First Amendment claim, a preliminary injunction is proper." *Id.* at 877.

## II. Plaintiffs are likely to succeed on the merits.

### A. Section 17-142 of the Fort Collins Code of Ordinances violates the First Amendment.

#### i. Plaintiffs' topless protest is expressive conduct.

Plaintiffs' expressive conduct, appearing topless at public places to protest the exploitation and sexualization of the female body, is protected because Plaintiffs intend to convey a particularized message that is likely to be understood by those who view it. *See Texas v. Johnson*, 491 U.S. 397, 404 (1989) (citing *Spence v. Washington*, 418 U.S. 405 (1974)); *see also Tagami v. City of Chicago*, 2015 WL 4187209, at *1-2 (N.D. Ill. July 10, 2015) (finding that topless protester at "GoTopless Day" event had "engaged in expressive conduct protected by the First Amendment"); *Hightower v. City & County of San Francisco*, 77 F. Supp. 3d 867, 878 (N.D. Cal. 2014) (finding that nude protesters at city hall expressing "pro-body" and anti-public-indecency-ordinance messages engaged in protected expression).

Plaintiffs choose this particular expressive conduct in order to convey their message against systemic, invidious gender discrimination and the censorship of the female body. Plaintiffs' actions have significant expressive meaning, especially in the context of "Free the Nipple" rallies and similar demonstrations. *See Spence*, 418 U.S. at 410 ("[T]he context in which a symbol is used for purposes of expression is important, for the context may give meaning to the symbol."); *Tagami*, 2015 WL 4187209, at *2.

The fact that Plaintiffs' conduct might be offensive to some does not make it any less expressive or protected. *See Spence*, 418 U.S. at 412 (noting that expression may not be prohibited merely "to protect the sensibilities of passersby"); *see also Johnson*, 491 U.S. at 414 ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.").

Finally, Plaintiffs' expressive conduct "can 'be fairly considered as relating to any matter of political, social or other concern to the community[.]'" *Snyder v. Phelps*. 562 U.S. 443, 453 (2011) (quoting *Connick v. Myers*, 463 U.S. 138, 146 (1983). Plaintiffs' expressive conduct is a protest of, and concerns the, exploitation and sexualization of women's bodies, along with the subjugation of women in modern society. Plaintiffs' expressive conduct is, therefore, speech on public issues or political speech. *Id.* "'[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection.'" *Id.*

> ii. Plaintiffs' expressive conduct takes place in a traditional public forum.

Section 17-142 restricts Plaintiffs' constitutionally protected expression in all public places, necessarily including public fora, which garner special protection under

6

the First Amendment. This is evident by example of Plaintiffs' public protests prior to the October 20, 2015 city council meeting, which took place at public sidewalks adjacent to public streets in downtown Fort Collins. These sidewalks, traditional public fora, are regulated by Section 17-142.

Public sidewalks "are considered, without more, to be 'public forums[.]'" *United States v. Grace,* 461 U.S. 171, 177 (1983); *Frisby v. Schultz*, 487 U.S. 474, 481 (1988) (finding that courts need not make any "particularized inquiry into the precise nature of a specific street" because "all public streets are held in the public trust and are properly considered traditional public fora"). "It is no accident that public streets and sidewalks have developed as venues for the exchange of ideas." *McCullen v. Coakley*, 134 S. Ct. 2518, 2529 (2014); *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515 (1939) ("Wherever the title of streets and parks my rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."). Section 17-142 clearly restricts constitutionally protected expression at public fora.

The Supreme Court has held that public sidewalks adjacent to public streets occupy a "'special position in terms of First Amendment protection' because of their historic role as sites for discussion and debate." *McCullen*, 134 S. Ct. at 2529 (quoting *Grace,* 461 U.S. at 180). Accordingly, "the government's ability to restrict expression in such locations is very limited." *Id.* at 2529 (internal quotation omitted). This is especially true for content-based restrictions. *Id.* (quoting *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)) ("In particular, the guiding First Amendment principle

7

that the 'government has no power to restrict expression because of its message, its ideas, its subject matter, or its content' applies with full force in a traditional public forum.").

### iii. The ordinance is content-based.

Section 17-142 is a content-based restriction of expression. Although the Supreme Court has long held that content-based restrictions elicit strict scrutiny, *see, e.g.*, *Carey v. Brown*, 447 U.S. 455 (1980), lower courts diverged on the meaning of "content-based" until *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015).[1] *Reed* clarified that a restriction is content based simply if it draws distinctions "based on the message a speaker conveys." 135 S. Ct. at 2227. *Reed* is clear that even "subtle" distinctions that define regulated expression "by its function or purpose . . . are distinctions based on the message a speaker conveys, and therefore, are subject to strict scrutiny." *Id.* This accords with *Johnson*, which held that "the emotive impact of speech on its audience is not a secondary effect unrelated to the content of the expression itself." 491 U.S. at 412 (internal quotations omitted). Section 17-142 is content-based for three distinct reasons.

First, Section 17-142 criminalizes expressive conduct only from certain speakers: women and girls. Even if it did not distinguish between protected and prohibited speech because of its function or purpose, Section 17-142 would be content-based because it privileges certain speakers over others. *See Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994); *see also Reed*, 135 S. Ct. at 2231 (noting that speaker-based laws are not necessarily content neutral).

---

[1] *Reed* involved a municipal "sign code" that regulated signs differently based on the kind of message they conveyed (such as "ideological," "political," or "temporary directional"). 135 S. Ct. at 2224-25. The Court rejected the city's argument that a law had to discriminate against certain viewpoints in order to be a content-based restriction. *Id.* at 2229.

8

Second, it is a content-based restriction on expression because it explicitly criminalizes only some instances of toplessness but not others, based on each instance's "function or purpose." *Reed*, 135 S. Ct. at 2227. Section 17-142 expressly permits the exposure of female breasts as long as it is for the purpose of "breastfeeding." *Id.* The law is therefore content based because a police officer would have to determine the purpose the expressive conduct served before deciding whether there was probable cause a woman was violating the law. *See Reed*, 135 S. Ct. at 2227 (where a law draws a distinction "on its face" by "defining regulated speech by its function or purpose," it is content based).

Third, even if Section 17-142 were facially content neutral, it would still be "considered content-based" because it was "adopted by the government because of disagreement with the message [the speech] conveys." *Reed*, 135 S. Ct. at 2227 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Section 17-142 was re-enacted solely to prevent expression through exposure of the female breast and Plaintiffs' protests against invidious gender discrimination; it was aimed explicitly against chilling future protests.

These distinctions make Section 17-142 a facially content-based restriction on expression that must elicit "the most exacting scrutiny." *Johnson*, 491 U.S. at 412; *Reed*, 135 S. Ct. at 2227.

> iv. *Section 17-142 fails under strict scrutiny because it is not narrowly tailored to serve any compelling government interest.*

As a facially content-based restriction of expression at traditional public fora, Section 17-142 is presumptively unconstitutional unless Defendant "prove[s] that the

9

restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 135 St. Ct. at 2231; *accord Johnson*, 491 U.S. at 412.

Section 17-142 does not contain a provision that describes its purposes or the government's interests. The Fort Collins City Council's discussions from October 20, 2015, reveal that Defendant considered two possible interests when enacting Section 17-142: morality and anti-exploitation. Neither can justify Section 17-142's infringements on First Amendment rights.

Section 17-142 is classified in the Fort Collins Code of Ordinances as an "Offense against Decency[.]"*See* FORT COLLINS, CO., MUN. CODE § 17-142 (2016). Nearly everyone who spoke out against allowing female toplessness at public places in Fort Collins during the public comment portion of the October 20, 2015, city council meeting articulated morality as the reason to continue criminalizing female toplessness in Fort Collins. *See* **Exhibit 1**, at pp. 7-11. One councilmember in particular openly disparaged Plaintiffs' expressive activities as immoral, asking the rhetorical question of "why minors should be exposed to live nudity when they are not allowed to be exposed to print nudity." *See Id.*, at p. 12. In other examples of the puritanical reasoning underlying the reauthorization of Section 17-142, in an email exchanges, Councilmember Ray Martinez and Mayor Wade Trozell agree with members of the public that the criminalization of the female breast and nipple should be continued for purposes of maintaining decency and morality in the City of Fort Collins. *See* **Exhibit 2**; **Exhibit 3**.

Defendant's interest in morality is not compelling. The United States Supreme Court has stated "the fact that the governing majority in a State has traditionally viewed

a particular practice as immoral is not a sufficient reason for upholding a law prohibiting the practice." *Lawrence v. Texas*, 539 U.S. 558, 577 (2003) (quoting *Bowers v. Hardwick*, 478 U.S. 186, 216 (1986); *See generally Loving v. Virginia*, 388 U.S. 1 (1967); *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015). Moral disapproval of a speaker's message is not a compelling interest under the First Amendment. *See, e.g.*, *Spence*, 418 U.S. at 412 (quoting *Street v. New York*, 394 U.S. 576, 592 (1969)) ("It is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers."); *Johnson*, 491 U.S. at 414 (holding that, as a "bedrock principle," the First Amendment prohibits censorship of expression based on its "offensive or disagreeable" nature); *See also* Mark Cenite, *Federalizing or Eliminating Online Obscenity Law as an Alternative to Contemporary Community Standards*, 9 Comm. L. & Pol'y 25, 68-69 (2004). Any purported government interest in morality does not trump Plaintiff's First Amendment rights.

Furthermore, Section 17-142 is not narrowly tailored to serve any purported interest in preserving morality. Section 17-142 is underinclusive. Section 17-142 does not prevent the public display of male breasts that may look and act the same as female breasts, which must be covered.[2] This provision does not comport with the city's purported interest in maintaining a "family-friendly" community, as it appears to define

---

[2] Medical consensus shows that male and female breasts are identical in appearance and function until puberty, and even after puberty there are instances of male breasts appearing and functioning like female breasts, some being capable of lactation. *See* Alexander N. Sencha, et al., *Imaging of Male Breast Cancer* 17-23 (Springer International Publishing 2015) (2015) (describing the anatomy, physiology, and development of the male breast). Section 17-142 is underinclusive because it does not address these situations.

11

that term. Moreover, Section 17-157 attempts to solve a problem already remedied by a Colorado Statute prohibiting public indecency, which criminalizes "[a] lewd exposure of an intimate part... of the body, not including genitals, done with intent to arouse or satisfy the sexual desire of any person." *See* C.R.S. § 18-7-301. Thus, not only does Defendant's "morality" justification fall short of being a compelling government interest, but Section 17-142 is also not narrowly tailored to that interest.

Finally, Section 17-142 is not narrowly tailored to Defendant's interest in protecting women and children from exploitation. Section 17-142 is underinclusive to the extent that it fails to prevent the potential exploitation of young females under the age of ten (and *all* young males), who are not required to conceal their breasts. Section 17-142 is overinclusive because it chills expression (such as Plaintiffs' demonstrations) *against* the exploitation and sexualization of women's bodies. Consequently, Section 17-142 undermines Defendant's interest in preventing the exploitation of women and children. All in all, Defendant cannot show that Section 17-142 is narrowly tailored to any compelling government interest. For this reason, Plaintiffs are likely to succeed on the merits of their First Amendment claim.

     *v.*  *Section 17-142 fails even under the more deferential O'Brien test.*

Even if Section 17-142 were to trigger the test for content-neutral restrictions of expression under *United States v. O'Brien*, 391 U.S. 367 (1968), Section 17-142 is still unconstitutional. *See Foxxxy Ladyz Adult World, Inc. v. Vill. of Dix*, 779 F.3d 706, 711 (7th Cir. 2015) (applying *O'Brien* to "municipality-wide regulations of public nudity"). Under *O'Brien*, a content-neutral restriction of expression is constitutional only if: (1) the restriction "is within the constitutional power of the Government," (2) the restriction "furthers an important or substantial governmental interest," (3) "the

12

governmental interest is unrelated to the suppression of free expression," and (4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." 391 U.S. at 377. While Plaintiffs do not contest Defendant's constitutional authority to enact an indecent exposure ordinance, Section 17-142 fails under three of the four *O'Brien* factors.

First, Section 17-142 does not "further[] an important or substantial governmental interest." *Id.* Defendant's interest in morality is not "important or substantial" because the First Amendment does not deny protection for morally offensive expression. *See, e.g.*, *Johnson*, 491 U.S. at 414; *Spence*, 418 U.S. at 412; *Street*, 394 U.S. at 592. Even assuming (without conceding) that Defendant's interest in morality is important or substantial, Section 17-142 still fails under this *O'Brien* factor. This is because Defendant cannot "produce some specific, tangible evidence establishing a link between the regulated activity and harmful secondary effects." *Tagami*, 2015 WL 4187209, at *3 (finding that defendant City of Chicago failed to defend its content-neutral public nudity law under *O'Brien*). Section 17-142 undermines Defendant's purported interest in morality because of the permissive exposure of male breasts.

Second, Defendant's justification is directly and impermissibly related to the suppression of free expression. *See Spence*, 418 U.S. at 406 ("The government . . . may not . . . proscribe particular conduct *because* it has expressive elements."); *see also Johnson*, 491 U.S. at 407 (finding that Texas' anti-flag-burning statute was related to the suppression of expression). Section 17-142's reauthorization is a direct reaction to Plaintiffs' expressive activity. Nearly every councilmember who spoke about Section

13

17-142 noted the expressive conduct of the Plaintiffs. Accordingly, Section 17-142 fails under *O'Brien* because Defendant cannot claim that Section 17-142 is unrelated to the suppression of free expression.

Third, the restriction on Plaintiffs' First Amendment freedoms is greater than necessary to further Defendant's interests. For the same reasons described above, Section 17-142 is not narrowly tailored to Defendant's interests. Defendant could advance its interests with less restrictive means, such as through an educational initiative, or simply by warning citizens about Plaintiffs' protests. *See, e.g.*, *Spence*, 418 U.S. at 412 ("[A]ppellant did not impose his ideas upon a captive audience. Anyone who might have been offended could easily have avoided the display."). In sum, Section 17-142 fails three of the four *O'Brien* factors, and failing even one makes Section 17-142 unconstitutional. 391 U.S. at 376-77. Accordingly, even if Section 17-142 is viewed as a content-neutral restriction, it fails scrutiny under *O'Brien*.

### B. Section 17-142 of the Fort Collins Code of Ordinances violates the Equal Protection Clause.

Section 17-142 violates the Equal Protection Clause of the Fourteenth Amendment because it is a gender-based classification neither supported by, nor substantially related to, a constitutionally sufficient justification. The ordinance creates a gender-based classification that does not serve any important governmental objective and that is not substantially related to the achievement of any such objective. *See, e.g.*, *United States v. Virginia*, 518 U.S. 515, 532-33 (1996); *Lawson v. Kelly*, 58 F. Supp. 3d 923, 934-35 (W.D. Mo. 2014). Defendant cannot deny that Section 17-142 creates a gender-based classification. *See* FORT COLLINS, CO., MUN. CODE § 17-142 (2016). Therefore, Defendant bears the burden of establishing an "exceedingly persuasive

justification" for making such a classification. *See Virginia*, 518 U.S. at 524 (quoting *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982)).

Defendant has no persuasive justification for criminalizing women—and only women—for certain conduct. Defendant also cannot show that the ordinance is related to the achievement of any legitimate governmental interest. Section 17-157 "perpetuate[s] the legal[] [and] social . . . inferiority of women," *Virginia*, 518 U.S. at 533-34, by being wielded as a tool to shut down Plaintiffs protests against the precise type of invidious legal discrimination they believe the City of Fort Collins already codified by stigmatizing women's bodies. Section 17-157 "is a status-based enactment divorced from any factual context from which we could discern a relationship to legitimate state interests; it is a classification of persons undertaken for its own sake, something the Equal Protection Clause does not permit." *Romer v. Evans*, 517 U.S. 620, 635 (1996). It is not substantially related to any constitutionally sufficient justification and, therefore, violates the Equal Protection clause.

### C. Section 17-142 of the Fort Collins Code of Ordinances violates Colorado's Equal Rights Amendment.

In Colorado, codified distinctions based solely on sex are prohibited. Colo. Const. Art. II, Section 29; *Colo. Civil Rights Com. v. Travelers Ins. Co.*, 759 P.2d 1358, 1363 (Colo. 1988) (holding Equal Rights Amendment, "prohibits unequal treatment based solely on circumstances of sex"); *see also People v. Salinas*, 191 Colo. 171, 551 P.2d 703 (1976). The Equal Rights Amendment also requires that any "legislative classifications based exclusively on sexual status receive the closest judicial scrutiny." *People v. Green*, 183 Colo. 25, 514 P.2d 769 (1973). Clearly, Section 17-142 classifies whether exposing the breast below the areola or nipple is a crime solely on

15

the basis of one's sexual status. It is therefore subject to strict scrutiny. *See* FORT COLLINS, CO., MUN. CODE § 17-142 (2016) ("No female who is ten (10) years of age or older shall knowingly appear in any public place with her breast exposed below the top of the areola and nipple[.]")

For the reasons outlined in Section II(A)(iv) of this briefing, *supra*, Section 17-142 cannot withstand strict scrutiny. It cannot even withstand heightened scrutiny. *See* Section II(B), *supra*. Section 17-142, on its face, violates Art. II, Section 29 of the Colorado Constitution, rendering it unenforceable.

### III. Plaintiffs satisfy the remaining preliminary injunction factors.

Plaintiffs' likelihood of success on the merits of their First Amendment and Equal Protection claims is enough to grant the preliminary injunction. *Minnesota Citizens Concerned for Life, Inc.*, 692 F.3d 864 at 877. Nevertheless, Plaintiffs also satisfy the remaining factors in favor of granting a preliminary injunction.

Plaintiffs meet the second factor, "irreparable harm," because they have already been injured by the chilling effect on their expressive conduct and the continued enforcement of the ordinance subjects them to discrimination on the basis of sex. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *see also Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir.2012) ("[W]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). When First Amendment rights are burdened, there is a presumption of irreparable harm. See *Cmty. Communications v. City of Boulder*, 660 F.2d 1370, 1376 (10th Cir. 1981); *Johnson*, 194 F.3d at 1163. Absent an injunction, Plaintiffs would face citation, arrest, and prosecution under Section 17-142 for continuing their expressive

activities. Because Plaintiffs have established that they are likely to succeed on the merits, they have also established irreparable harm as the result of the deprivation of their First Amendment rights. *See, e.g., Cmty. Communications*, 660 F.2d at 1376; *Johnson*, 194 F.3d at 1163**.**

Plaintiffs meet the third factor because Plaintiffs' injury outweighs any potential harm to Defendant. "The balance of equities . . . generally favors the constitutionally-protected freedom of expression." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012); *see also Awad*, 670 F.3d at 1132 ("Delayed implementation of a [governmental] measure that does not appear to address any immediate problem will generally not cause material harm, even if the measure were eventually found to be constitutional and enforceable."). There is no harm to Defendant by implementation of an injunction; in fact, Defendant has no significant interest in enforcing Section 17-142 because it is likely unconstitutional. *See Awad v. Ziriaz*, 670 F.3d 1111, 1131-32 (10th Cir. 2012); *Johnson*, 194 F.3d at 1163.

Finally, Plaintiffs meet the fourth factor, showing that a preliminary injunction is in the public interest. Injunctions blocking state action that would otherwise interfere with First Amendment rights are consistent with the public interest. *Elam Constr. v. Reg. Transp. Dist.,* 129 F.3d 1343, 1347 (10th Cir.1997)("The public interest...favors plaintiffs' assertion of their First Amendment rights."); *Utah Licensed Beverage Ass'n*, 256 F.3d at 1076; *Johnson,* 194 F.3d at 1163; *Local Org. Comm., Denver Chap., Million Man March v. Cook*, 922 F. Supp. 1494, 1501 (D. Colo. 1996). Additionally, "it is always in the public interest to prevent a violation of a party's constitutional

17

rights." *Awad*, 670 F.3d at 1132; *Phelps-Roper*, 545 F.3d at 689. Preventing Section 17-142's likely unconstitutional enforcement while this case is pending serves the public interest.

## CONCLUSION

For the reasons stated, Plaintiffs respectfully request that this Court grant their Motion for a Preliminary Injunction, enjoin enforcement of Section 17-142, and prohibit Defendants from discriminatorily arresting Plaintiffs and all others similarly situated when they engage in the protected activity of standing topless at public places in Fort Collins, Colorado.

Dated this 31st day of May, 2016.

KILLMER, LANE & NEWMAN, LLP

*s/ David A. Lane*

David A. Lane
Andy McNulty
Killmer, Lane & Newman, LLC
1543 Champa Street, Suite 400
Denver, CO  80202
(303) 571-1000
dlane@kln-law.com
amcnulty@kln-law.com

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of May, 2016, a true and correct copy of the foregoing **MOTION FOR PRELIMINARY INJUNCTION**, was filed with the Clerk of Court using the CM/ECF system, and a copy will be sent via email to the following:

Fort Collins City Attorney

*s/ David A. Lane*