IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-01308-RBJ

FREE THE NIPPLE – FORT COLLINS, an unincorporated association,
BRITTIANY HOAGLAND, and
SAMANTHA SIX,

    Plaintiffs,

v.

CITY OF FORT COLLINS, COLORADO,

    Defendant.

---

ORDER

---

    Plaintiffs seek a preliminary injunction enjoining the City of Fort Collins from enforcing an ordinance prohibiting women from exposing their breasts in public other than for purposes of breastfeeding. I conclude that it is likely, absent some significant new evidence not heretofore submitted by defendant, that I will ultimately find at trial that the ordinance violates the Equal Protection Clause of the United States Constitution. I also find that the other factors courts must assess in deciding a motion for a preliminary injunction weigh heavily in plaintiffs' favor. Therefore, plaintiffs' motion is GRANTED.

## I. BACKGROUND

    Brittiany Hoagland, Samantha Six, and Free the Nipple—describing itself as an unincorporated association of individuals—challenge § 17-142(b) of the Fort Collins Municipal Code. Prior to October 20, 2015 § 17-142 provided that "[n]o person shall knowingly appear in any public place in a nude state or state of undress such that the genitals or buttocks of either sex or the breast or breasts of a female are exposed." Fort Collins, CO., Mun. Code § 17-142 (2011).

1

Arguing that the ordinance unduly discriminated against women, plaintiffs and others held a protest of the law on August 23, 2015 on the corner of College Avenue and Mulberry Street in downtown Fort Collins. Complaint, ECF No. 1 at ¶26. The protestors exposed the top half of their bodies with the exception of their nipples and breast which they covered with opaque dressings. Plaintiffs suggest that their manner of dress at the protest complied with § 17-142 but was meant to send the message that this ordinance was "borne of tired sex stereotypes, double standards, hypocrisies, and the hyper-sexualization (primarily by men) of women's breasts." *Id.* They inform the Court that their protest is part of a growing movement around the country that seeks to overturn similar laws that allow men and boys to expose their breasts and nipples in public but criminalize women and girls who do the same.

In reaction to the protest, defendant allegedly considered repealing the law. *Id.* at ¶25. Instead, however, on or about November 3, 2015 the Fort Collins City Council enacted Ordinance No. 134. It provides:

> No female who is ten (10) years of age or older shall knowingly appear in any public place with her breast exposed below the top of the areola and nipple while located: (1) in a public right-of-way, in an natural area, recreation area or trail, or recreation center, in a public building, in a public square, or while located in any other public place; or (2) on private property if the person is in a place that can be viewed from the ground level by another who is located on public property and who does not take extraordinary steps, such as climbing a ladder or peering over a screening fence, in order to achieve a point of vantage.

Fort Collins, CO., Mun. Code § 17-142(b) (2015). The municipal code defined a "public place" to mean:

> [A] place in which the public or a substantial number of the public has access, and includes but is not limited to highways including sidewalks, transportation facilities, schools, places of amusement, parks, playgrounds and the common areas of public and private buildings and facilities, and shall not include any theater, concert hall, museum, school or similar establishment to the extent the same is serving as a performance venue.

*Id.* § 17-142(a)(3). This modification also exempted from the law's coverage women who are breastfeeding in places they are legally entitled to be. *Id.* § 17-142(d).

The modification of § 17-142 did little to mollify plaintiffs' concerns. ECF No. 1 at ¶38.[1] They contend that by implementing the new version the City Council "continu[es] the criminalization of women who appear at public places with their breasts and nipples exposed." *Id.* Significantly, plaintiffs point out that § 1-15 of the Fort Collins Code of Ordinances provides that each violation of § 17-142 is punishable by "a fine not exceeding two thousand six hundred fifty dollars ($2,650.00) or by imprisonment not exceeding one hundred eighty (180) days, or by both such fine and imprisonment, in addition to any costs which may be assessed." *Id.* at ¶40. They allege that § 17-142 is consequently "one of the most restrictive public nudity ordinances in the nation." *Id.* at ¶41.

Plaintiffs' complaint and motion for a preliminary injunction were filed on May 31, 2016. On August 2, 2016 defendant filed a motion to dismiss the entirety of plaintiffs' complaint. On October 20, 2016 the Court granted the motion in part, dismissing plaintiffs' First Amendment claim, but otherwise denying it. The Court held a hearing on plaintiffs' pending motion for a preliminary injunction on December 19, 2016. ECF No. 48 (hearing minutes). That motion is the subject of this Order.

## II. ANALYSIS

To succeed on a motion for a preliminary injunction, the movant must demonstrate the following four factors:

> (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest.

---

[1] For ease of use the Court will refer to § 17-142(b) and Ordinance No. 134 simply as "§ 17-142."

*Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001). However, an injunction that alters the status quo and affords the movants all of the relief they could recover at the conclusion of a full trial on the merits, as is the case here, "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id*. Plaintiffs "must [therefore] make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms[.]" *See, e.g.*, *O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 976 (10th Cir. 2004) (en banc) *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) (citation omitted). I address each factor in turn.

### A. <u>First Factor: Likelihood of Success on the Merits.</u>

The Equal Protection Clause of the Fourteenth Amendment bars state governmental entities from discriminating between the sexes unless they have an "exceedingly persuasive justification" for doing so. *See United States v. Virginia*, 518 U.S. 515, 524 (1996); *KT.& G Corp v. Attorney Gen. of State of Okla.*, 535 F.3d 1114, 1137 (10th Cir. 2008). Phrased somewhat differently, the government's rationale for distinguishing between males and females must satisfy the intermediate scrutiny standard of being "substantially related" to an "important governmental interest." *Id.*

This heightened standard bars governments from discriminating on the basis of supposed "differences" between the sexes when doing so is a means of "creat[ing] or perpetuat[ing] the legal, social, and economic inferiority of women." *Virginia*, 518 U.S. at 534. Indeed, as the Supreme Court has made "abundantly clear in past cases[,] . . . gender classifications that rest on impermissible stereotypes violate the Equal Protection Clause, even when some statistical support can be conjured up for the generalization." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127,

4

139 n.11 (1994). *See also Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 726 (1982) (explaining that "[t]he purpose" of intermediate scrutiny is to make sure that sex-based classifications are based on "reasoned analysis rather than . . . traditional, often inaccurate, assumptions about the proper roles of men and women.").

In this case, Fort Collins has on the books an ordinance that on its face discriminates against women. The City has nevertheless justified its ordinance in two interrelated ways. *See* Def.'s Mot. to Dismiss, ECF No. 18 at 13–20. First, it argues that the law satisfies intermediate scrutiny because it is necessary in order to maintain "public order" and to "protect children." *See, e.g.*, Reply to Pls.' Resp. to Def.'s Hr'g Br., ECF No. 51 at ¶¶6–7. Second, it contends that discriminating between male and female breasts does not raise an equal protection issue because men and women are not similarly situated when it comes to their breasts. *See, e.g.*, Def.'s Hr'g Br., ECF No. 47 at 4. In other words, Fort Collins believes there is a "real" and constitutionally significant difference between male and female breasts. *Id.* at 8.

On defendant's first argument, I find that the evidence Fort Collins has presented about these governmental interests amounts to little more than speculation. For instance, during the hearing defendant called Assistant Police Chief Jerome Schager who testified that topless females in public likely might cause distracted driving and traffic issues that disrupt public order. There are many things that could potentially distract drivers and disrupt traffic, but the constitutional issue is whether there is such a threat to public order that it rises to the level of an important government interest. Frankly, without any significant evidence on this point, I'm skeptical that it does. Rather, it appears that underlying Fort Collins's belief that topless females are uniquely disruptive of public order is the same negative stereotype about female breasts that I

5

discuss in more depth later—namely, that society considers female breasts primarily as objects of sexual desire whereas male breasts are not.

Nor has Fort Collins provided any meaningful evidence that the mere sight of a female breast endangers children. The female breast, after all, is one of the first things a child sees. Of course, those are very young children, but children of any age might come upon a woman breastfeeding a child and see a naked breast. Yet no one suggests that they are harmed by that experience. Indeed, public breastfeeding is permitted by Colorado law. *See* C.R.S. § 25-6-302 ("A mother may breast-feed in any place she has a right to be."). It seems, then, that children do not need to be protected from the naked female breast itself but from the negative societal norms, expectations, and stereotypes associated with it.

The City could have looked for such evidence. Both Denver and Boulder, for example, have laws that permit what plaintiffs here seek, as do many other jurisdictions within Colorado and around the country. *See* ECF No. 1 at ¶24. Presumably, these places have experiences and evidence to share. But during the hearing, representatives of Fort Collins admitted that they had made no effort to contact either of these neighboring cities or any other jurisdiction to see what their experiences have been. Simply put, Fort Collins has not shown the Court that a law permitting public exposure of female breasts would have a significantly negative impact on the public.

Frankly, even if this ordinance were not on the books I doubt that women would be regularly walking through downtown Fort Collins with their breasts exposed, or parading in front of elementary schools, or swimming topless in the public pool, as defendant cautioned us during the hearing. As with many other legal behaviors, common sense and sensitivity to the feelings of

others tells us that there is a time and a place.[2]  It seems to me that the primary focus here is the equal right of women to expose their breasts in public, not necessarily a plan to make it an everyday, everywhere routine.

Throughout this case, Fort Collins has repeatedly pointed out that it is far from unique in enacting laws that criminalize females—and only females—who appear topless in public, see, e.g., *Ways v. City of Lincoln*, 331 F.3d 596 (8th Cir. 2003) (Lincoln, NE ordinance); *City of Albuquerque v. Sachs*, 92 P.3d 24 (N.M. App. 2004) (Albuquerque, NM ordinance), and that striking down the law would upset many Fort Collins residents.  Unfortunately, our history is littered with many forms of discrimination, including discrimination against women.  As the barriers have come down, one by one, some people were made uncomfortable.  In our system, however, the Constitution prevails over popular sentiment.  *See Lawrence v. Texas*, 539 U.S. 558, 577 (2003).  *See also Craig v. Boren*, 429 U.S. 190, 210 n.23 (1976) (disapproving of the holding in *Goesaert v. Cleary*, 335 U.S. 464(1948), in which the Supreme Court earlier upheld a Michigan law that barred women from bartending that was justified on the grounds that the sight of female bartenders caused "moral and social problems").

I turn next to the City's second argument, essentially that there are inherent physical differences between male and female breasts.  Of course there are.  The most obvious difference is that female breasts have the potential to nourish children, whereas male breasts do not.  Dr. Tomi-Ann Roberts, the Chair of the Psychology Department at Colorado College, testified at the preliminary injunction hearing that, aside from that difference, the sexes are in large part

---

[2] I do not address an entirely different subject –regulation of pornography.  This Order does not restrict Fort Collins' ability to enforce other statutes that bar individuals from exposing themselves indecently in public.  However, Fort Collins has produced no credible evidence that the public display of a female breast is necessarily pornographic.  This order simply prohibits Fort Collins from punishing women, but not men, for appearing in public topless absent any other unlawful behavior or intent.

similarly situated when it comes to their breasts. It would be naïve, however, for this Court not to recognize that there are physical differences between male and female breasts.[3] But while inherent physical differences can in some circumstances be a permissible basis for differential treatment by the government, see *Virginia*, 518 U.S. at 533, that is not the difference between the sexes on which § 17-142 is based.

Rather, based on the present record, I find that the ordinance discriminates against women based on the generalized notion that, regardless of a woman's intent, the exposure of her breasts in public (or even in her private home if viewable by the public) is necessarily a sexualized act. Thus, it perpetuates a stereotype engrained in our society that female breasts are primarily objects of sexual desire whereas male breasts are not. *See, e.g., People v. Santorelli*, 600 N.E.2d 232, 237 (N.Y. 1992) (Titone, J. concurring) (acknowledging this perception and remarking that it is "a suspect cultural artifact rooted in centuries of prejudice and bias toward women"); *see also Williams v. City of Fort Worth*, 782 S.W.2d 290, 297 (Tex. App.—Fort Worth 1989) (noting "the concept that the breasts of female[s] . . . unlike their male counterparts, are commonly associated with sexual arousal" but explaining that, in reality, this is "a viewpoint . . . subject to reasonable dispute, depending on the sex and sexual orientation of the viewer").

At the hearing, Dr. Roberts, a twenty-five-year veteran of research into this issue, testified that such a stereotype is created through sexual objectification of women. Research, she tells us, shows that sexual objectification of women leads to negative cognitive, behavioral, and emotional outcomes for both women and men. She opined that sexual objectification of the female breast contributes to higher rates of sexual assault and violence, as it tends to make

---

[3] The City informed the Court, for example, that after puberty "the tactile sensitivity of all areas of a woman's breasts is significantly greater than a man's." ECF No. 47 at 9 (citing J.E. Robinson & R.V. Short, *Changes of breast sensitivity at puberty, during the menstrual cycle, and at parturition*, British Medical Journal (1977) 1, 1188–91). That is not the only physical difference between a typical male and female breast.

younger and younger females appropriate sexual targets.  She was asked what societal purpose there was for viewing female breasts as sexual objects.  Her response: "It serves the function of keeping women in their place."

At bottom this ordinance is based upon *ipse dixit—*the female breast is a sex object because we say so.  That is, the naked female breast is *seen* as disorderly or dangerous because society, from Renaissance paintings to Victoria's Secret commercials, has conflated female breasts with genitalia and stereotyped them as such.  The irony is that by forcing women to cover up their bodies, society has made naked women's breasts something to see.

Admittedly, other courts that have confronted laws similar to § 17-142 have supported either or both of Fort Collins' arguments.  *See, e.g.*, *Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1257 (5th Cir. 1995) ("Courts need no evidence to prove self-evident truths about the human condition—such as water is wet. . . . The district court correctly concluded that Arlington's definition of nudity [to exclude male breasts] did not discriminate against women solely on the basis of gender."); *Buzzetti v. City of N.Y.*, No. 96 CIV. 7764 (JSM), 1997 WL 164284, at *4 (S.D.N.Y. Apr. 8, 1997), *aff'd*, 140 F.3d 134 (2d Cir. 1998) ("*Rightly or wrongly*, our society continues to recognize a fundamental difference between the male and female breast.") (emphasis added); *Tolbert v. City of Memphis*, 568 F. Supp. 1285, 1290 (W.D. Tenn. 1983) ("*In our culture*, for the purpose of this type of ordinance [barring public female toplessness at beaches], female breasts are a justifiable basis for a gender-based classification.") (emphasis added).  I respect those courts and their decisions.  Reasonable minds can differ.

But I do not accept the notion, as some of those courts have, that we should continue a stereotypical distinction "rightly or wrongly," or that something passes constitutional muster because it has historically been a part of "our culture."  We would not say that, rightly or

wrongly, we should continue to recognize a fundamental difference between the ability of males and females to serve on juries. *See J.E.B.*, 511 U.S. at 127. Or between male and female estate administrators. *See Reed v. Reed*, 404 U.S. 71 (1971). Or between military cadets. *See Virginia*, 518 U.S. at 515. Or between the ability of males and females to practice law. *Bradwell v. People of State of Ill.*, 83 U.S. 130 (1872). Nor should we here.

After much thought, I have concluded that going out on this lonely limb is the right thing to do. I have no more right to fall back on "the way we have always done it" than others who have reassessed their thinking. *See Frontiero v. Richardson*, 411 U.S. 677, 685 (1973) ("As a result of notions such as [women should occupy the 'domestic sphere' whereas men should occupy 'civil life'], our statute books gradually became laden with gross, stereotyped distinctions between the sexes."). I find that plaintiffs have put forward a convincing case that § 17-142 is based on an impermissible gender stereotype that results in a form of gender-based discrimination. I therefore conclude that plaintiffs have demonstrated a strong likelihood that they will succeed at the permanent injunction trial in establishing that § 17-142 as enacted violates the Equal Protection Clause of the United States Constitution.[4]

### B. Factor Two: Irreparable Injury to the Movant.

One might ask, how can there be an irreparable injury if plaintiffs are prohibited until a final trial on the merits from doing what they have been unable to do for centuries? The short

---

[4] Plaintiffs also argue that the Fort Collins ordinance violates the Equal Rights Amendment of the Colorado Constitution. That Amendment reads: "Equality of rights under the law shall not be denied or abridged by the state of Colorado or any of its political subdivisions on account of sex." Colo. Const. art. II, § 29. Under the Equal Rights Amendment "legislative classifications based solely on sexual status must receive the closest judicial scrutiny." *People v. Green*, 514 P.2d 769, 770 (Colo. 1973) (citing *Frontiero*, 411 U.S. 677 (1973); *Reed v. Reed*, 404 U.S. 71 (1971)); *see also People v. Salinas*, 551 P.2d 703, 706 (Colo. 1976) ("[The Colorado Equal Rights Amendment] prohibits unequal treatment based exclusively on the circumstance of sex, social stereotypes connected with gender, and culturally induced dissimilarities."). However, because I have concluded that the ordinance violates the federal constitution, I need not reach or decide the state constitutional issue. That determination is best left to the Colorado courts.

answer is that any infringement of one's constitutional rights inflicts an irreparable injury. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (holding that the denial of a constitutional right "for even minimal periods of time, unquestionably constitutes irreparable injury"); *Adams By & Through Adams v. Baker*, 919 F. Supp. 1496, 1505 (D. Kan. 1996) (finding that a plaintiff had demonstrated irreparable injury where her school refused to allow her to join the wrestling team because of the "injury inherent in a denial of [the] constitutional right[]" to equal protection); *see also* 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (3d ed. 2014) ("When an alleged deprivation of a constitutional right is involved . . . most courts hold that no further showing of irreparable injury is necessary.") (footnotes omitted); *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012) (same); *Battle v. Mun. Hous. Auth. for City of Yonkers*, 53 F.R.D. 423, 429 (S.D.N.Y. 1971) ("Whenever constitutional rights as basic as those here asserted are denied [i.e. equal protection], each day's damage is irreparable.").

  **C.**  <u>**Factor Three: Balance of Injuries**</u>**.**

  Similarly, I find the balance of injuries weighs strongly in plaintiffs' favor. As discussed above, any time the government denies a person a constitutional right or protection, that person's injury is serious. *See, e.g.*, *Elrod*, 427 U.S. at 373. By comparison, the injury to defendant is minimal. Defendant contends that many inhabitants of Fort Collins do not approve of allowing topless females in public. *See* ECF No. 19 at 29–30. Acknowledging that for many people prohibiting females to be topless in public remains a significant issue of personal morality, I find that such concerns are outweighed by the constitutional rights of others. *See* 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.2 ("[W]hen plaintiff is claiming the loss of a constitutional right, courts commonly rule that even a temporary loss outweighs any harm to defendant and that a preliminary injunction should issue[.]").

### D. Factor Four: Public Interest.

Finally, with respect to whether this preliminary injunction is in the public interest, I note that, as many courts have too explained, "it is always in the public interest to prevent the violation of a party's constitutional rights." *See, e.g.*, *Connection Distrib., Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (First Amendment); *Strawser v. Strange*, 44 F. Supp. 3d 1206, 1210 (S.D. Ala. 2015) (Fourteenth Amendment). Thus, I find the fourth factor also weighs in plaintiffs' favor.

## CONCLUSION AND ORDER

Finding that all four factors weigh in plaintiffs' favor, and having applied the extra scrutiny that an injunction of this type requires, I grant plaintiffs' motion for a preliminary injunction. ECF No. 2. Pending a final trial on plaintiffs' request for a permanent injunction, or other resolution, the Court enjoins the City of Fort Collins from enforcing § 17-142(b) of the Fort Collins Municipal Code or Ordinance No. 134 to the extent that it prohibits women, but not men, from knowingly exposing their breasts in public.

DATED this 22nd day of February, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge